*The inhabitants of* BIDDEFORD *vs. The inhabitants of* SACO.

Where a husband had been absent at sea more than sixteen years prior to *March* 21, 1821, without having been heard from, except a rumor that he was impressed on board a British vessel of war; this was held to afford legal ground for the presumption that he was dead; so that the wife was capable of acquiring a new settlement for herself by dwelling on that day in another town, under *Stat.* 1821, *ch.* 122.

Illegitimate children, under age, living with their mother on the 21st day of *March*, 1821, do not follow a new settlement acquired by her by residence on that day in some town in this State; but retain the settlement which she had at their birth.

THIS was an action of *assumpsit* for the support of *Mary Billings*, and her two sons, of the ages of about twenty and seventeen years respectively. The parties agreed that she was born in *Kittery*, and removed with her father to *Saco*, where she was married to *Samuel Billings*, *Aug.* 10, 1788. Her husband was a sailor, and between the years 1800 and 1805, while resident in *Biddeford*, he sailed on a voyage; since which he had never been heard from; but it was reported that he was impressed by a British armed vessel. His wife continued to live in *Biddeford*; and about the year 1810, she commenced living with one *Allard*, as his house-keeper, by whom she had the two sons, who were born in *Biddeford*. In the autumn of 1817, they all removed with *Allard* to *Saco*, where they resided till after *March* 21, 1821; when they removed to *Scarborough*, thence back to *Saco*, and thence to *Biddeford*, where *Allard* died in *Feb.* 1830; having for sometime previous to his death received supplies as a pauper from the defendants; but with-

out having gained any new settlement in *Biddeford*, subsequent to the passage of the act of *March* 21, 1821.

*W. Goodenow*, for the plaintiffs, to the point that the mother acquired a settlement in *Saco*, by residence on the 21st day of *March*, 1821, the long absence of her husband raising the presumption of his death, cited 1 *Stark. Ev.* 379, 380; 2 *Stark. Ev.* 218, 358, 359; *King v. Padlock*, 18 *Johns.* 141; *Van Buskirk v. Claw, ib.* 346; *Abbot v. Bailey*, 6 *Pick.* 89.

And he contended that the children acquired a settlement there by the operation of the same statute upon their actual residence; the statute laying down a fixed and imperative rule, designed to prevent, as far as possible, the litigation of doubtful questions of settlement; and it being contrary to the policy of the law to separate parents and children. *Lubec v. Eastport*, 3 *Greenl.* 220; *Shirley v. Watertown*, 3 *Mass.* 322; *Hallowell v. Gardiner*, 1 *Greenl.* 93; *Green v. Buckfield*, 3 *Greenl.* 136.

*J. & E. Shepley*, for the defendants, resisted the application of the statute of *March* 21, 1821, to the mother in this case, on the ground that *Billings* not being proved to be dead, his settlement was confirmed, by the same act, in the place of his last domicil, which was *Biddeford*. And by the same rule the settlement of the wife was there also, the wife having in all cases the settlement of her husband. There is no general rule as to the period beyond which an absent man shall be presumed to be dead; 1 *Phil. Ev.* 161, *note a.*—every case being governed by its peculiar circumstances. And in the present case the fact of impressment sufficiently explains his absence and his silence; leaving the presumption to rest on the general chances of human life, which at his probable age, are in his favor.

The residence of the wife in *Saco*, at the time of the passage of the act, cannot affect the case; as it is not in her power to change the domicil of her husband. *Knox v. Waldoborough*, 3 *Greenl.* 455; *Parsonsfield v. Kennebunkport*, 4 *Greenl.* 47; *Pittston v. Wiscasset, ib.* 293.

Neither did the children gain a settlement in *Saco*, by residence in 1821, they not being emancipated. *Somerset v. Dighton*, 12

*Mass.* 383; *Wright v. Wright,* 2 *Mass.* 109; *Taunton v. Plymouth,* 15 *Mass.* 203; *Hallowell v. Gardiner,* 1 *Greenl.* 93; *Lubec v. Eastport,* 3 *Greenl.* 220; *Sumner v. Sebec,* 3 *Greenl.* 223.

MELLEN C. J. delivered the opinion of the Court at the ensuing June term, in *Kennebec.*

From the facts reported, the legal presumption must be that *Samuel Billings,* the husband of *Mary Billings,* was dead prior to the 21st of *March,* 1821. Between the years 1800 and 1805, he went to sea as a common sailor, and has never since been heard of; though there was a rumor that he was impressed on board a British armed vessel; but whether there was any foundation for the report does not appear; and its probability is entirely done away by the fact of his not having returned, if alive, soon after the peace of 1814, between this country and Great Britain, when he must doubtless have been exchanged and released. At any rate the presumption of his death before 1821, is on every principle admissible. Such being assumed as the fact, *Mary Billings,* his widow, was capable of gaining a settlement in her right; as she resided, dwelt and had her home in *Saco,* on the 21st day of *March* 1821, she, by virtue of the act passed on that day, *ch.* 122, gained a settlement in *Saco.* But her two illegitimate children who were then living with her, and composing part of her family and dependent upon her, were incapable of gaining a settlement in their own right by virtue of said act. And as they were born before their mother gained her settlement in *Saco,* they have no derivative settlement there under her. The second section of the act declares that "illegitimate children shall follow and have the settlement of their mother at the time of their birth, if any she shall then have within the State." Where the mother's settlement was, at the time of their birth, is an immaterial inquiry in this case, inasmuch as it was not in *Saco;* probably it was in *Kittery.* The above quoted passage is precisely in the same language used in the act of Massachusetts of 1793, which was in force in this State until our statute of 1821 was enacted. The authority cited by the counsel for the plaintiffs to show that the children gained a settle-

ment in their own right, do not apply. In the present case there is no proof of their emancipation, or any thing equivalent; indeed the contrary appears to be the fact. *Hallowell v. Gardiner*, 1 *Greenl.* 93. The plaintiffs are entitled to judgment.